UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MICHAEL P. NANCE                                          CIVIL ACTION

VERSUS                                                   NO. 03-3092

NEW ORLEANS AND BATON ROUGE                              SECTION "F" (3)
STEAMSHIP PILOTS ASSOCIATION
(NOBRA), ET AL

REPORT AND RECOMMENDATIONS

On June 21, 2006, the matter of the Board of Examiners' Motion for Award of Attorney

Fees and Costs pursuant to 42 U.S.C. § 1988 and/or Fed. R. Civ. P. 54(d) [Rec. Doc. No. 102]

came on for hearing before the undersigned magistrate judge.[1]  For the following reasons,

IT IS RECOMMENDED that the court issue the following orders, to wit:

IT IS ORDERED that the Board of Examiners' Motion for Award of Attorney Fees and

Costs [Rec. Doc. No. 102] be DENIED IN PART, that is insofar as the Board seeks the

imposition of attorney fees and costs pursuant to 42 U.S.C. § 1988 as a prevailing defendant.

IT IS FURTHER ORDERED that the Board of Examiners' Motion [Rec. Doc. No.

102] be GRANTED IN PART, that is insofar as it seeks to an order pursuant to Fed. R. Civ. P.

54(d) that costs be taxed against the plaintiff as authorized by 28 U.S.C. § 1920.

IT IS FURTHER ORDERED that, in accordance with Local Rule 54.3 but within 30

days of the entry of the final order granting Rule 54(d) costs, the Board of Examiners shall file

---

[1]*See* Order of Reference filed May 24, 2006, at ¶ 9 [Rec. Doc. No. 107].

1

with the Clerk of this Court a notice of application to have the costs taxed, together with a

memorandum signed by the attorney of record stating that the items are correct in that the items

sought to be taxed are consistent with the dictates 28 U.S.C. § 1920 and that the costs have been

necessarily incurred.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 3, 2003, plaintiff, Michael Nance (a commissioned steamship river boat

pilot and member of NOBRA) filed the captioned matter against defendants, the Board of

Examiners ("the Board"), New Orleans and Baton Rouge Steamship Pilots Association

(NOBRA), Captain William O. "Bud" Watson, Captain Chris Brown and Captain Louis Lahners

(hereinafter referred to as the "NOBRA defendants").  Plaintiff's allegations were that the

defendants, individually and in concert, deprived him of his ability to work by utilizing

Louisiana's statutory scheme for discipline of pilots in a manner that unlawfully disciplined

certain pilots more harshly than other  pilots, solely on the basis of the pilots' support or lack of

support of NOBRA's current elected membership.  Plaintiff claimed violation of his rights to due

process and equal protection, asserting claims under 42 U.S.C. §§ 1983, 1985(3) and 1986, all of

which theories of liability arose out of precisely the same set of facts.  Plaintiff claimed that the

rules of the Board of Examiners were arbitrarily applied resulting in Nance receiving disparate

and unequal treatment (Equal Protection Clause violation) and that Louisiana's statutory scheme

for discipline of NOBRA pilots, as applied, unlawfully deprived him of a protected liberty

interest and notice of an opportunity to be heard (Due Process Clause violation).

The background facts were that NOBRA participates in the Vessel Traffic Service (VTS),

a program to promote safety on the river designed by the U. S. Coast Guard.  NOBRA personnel

are contractually obligated to provide information to the personnel of VTS.  Manning of VTS requires six pilots and VTS is operated on a 24 hour basis.

Nance arrived for his 8 hour mid-shift at VTS a little after midnight on April 19, 2002, and then left his post and the building without notifying the NOBRA dispatcher, the Coast Guard Supervisor or anyone else of his departure.  He did not return until 7:09 A.M., retrieved his personnel bag, spoke briefly to his NOBRA pilot replacement, Captain Dan Moore, and again left the building.  The exact whereabout of Nance during his 7 hour absence was disputed. Nance claims to have been in the French Quarter, yet the investigation placed him in a strip club called DC's Lounge in Gretna and at a friend's house.

Before Nance returned to his post, Captain Moore had contacted NOBRA to report Nance's absence from his post. Captain Chris Brown drove to the VTS center to determine whether there should be some police involvement due to foul play.  By the time Brown arrived, Nance had returned and then departed.  Captain Moore notified Brown of that, as well as the fact that Nance appeared to have been drinking (slurred speech).  Captain Watson saw Nance at the NOBRA office on April 19, 2001 and demanded that he submit to a "breathalyzer" test for the presence of alcohol; however, Nance did not submit to the test that day.

The Board of Examiners for the New Orleans and Baton Rouge Steamship Pilots ("BOE") wrote Governor Foster for authority to investigate misconduct by Nance, to wit: (1) unauthorized absence (UA) from his post and (2) failure to submit to a breathalyzer test under suspicion of drinking while on duty.  Governor Foster agreed to the investigation.  Nance admitted to the UA from his post, but stated that he only refused the test until he had the opportunity to contact his attorney.

3

The investigation and proceedings initially resulted in Nance executing a "Return to Duty Program" on November 26, 2002, in which he acknowledged being UA from his post for an extended period of time, that he refused to submit to an alcohol test and that his conduct was improper. He also agreed to discipline in the form of a six month suspension. The recommendations were sent by the BOE to Governor Foster by letter dated December 2, 2002. Foster rejected the recommendation of the BOE and insisted on more stringent language dealing with a two year probationary period. The parties resumed plea negotiations and reached another agreement. The second was acceptable to Foster. On May 13, 2003, Nance signed a "Return to Duty Program" that was acceptable to the Governor and on November 3, 2003, this lawsuit was filed.

On December 7, 2004, within a month of the pretrial conference, the NOBRA defendants and the Board filed motions for summary judgment. The case against NOBRA, Captain Watson, Captain Lahners and Captain Chris Brown, who were sued personally, was dismissed by the district judge based upon a finding that there were no material issues of fact in dispute. [Rec. Doc. No. 65]. With respect to the plaintiff's § 1983 claim, the district judge noted the complete absence of evidence that the NOBRA defendants played any part in the decision regarding the plaintiff; rather, the court noted that it was uncontroverted in the summary judgment record that the decision with respect to disciplinary proceeding and punishment of the plaintiff was made by Governor Foster and the Board of Examiners. The court found the plaintiff's § 1985(3) claim wholly without merit because there was no claim that the conspiracy alleged was motivated by racial animus, which is a necessary predicate to a § 1985(3) claim. Without the predicate existence of a § 1985 conspiracy, plaintiff's claim pursuant to § 1986 failed.

4

The Board's Motion for Summary Judgment based upon Eleventh Amendment immunity, absolute judicial immunity and qualified immunity was denied.  In this regard, the district judge found that the Board was not an arm of the state for purposes of Eleventh Amendment immunity, the Board failed to show an exceptional situation warranting the imposition of absolute judicial immunity (the threshold factors for same being fact-driven), and that there were material issues of fact as to whether the Board's actions were objectively reasonable.  The district judge further determined that the summary judgment record, insofar as it addressed plaintiff's claim that other pilots received less severe punishments for comparable violations, was sufficient to raise a jury issue.  Plaintiff's §§ 1985(3) and 1986 claims against the Board were dismissed for the same reasons that those claims failed as against the NOBRA defendants.[2]

The Board appealed the district judge's January 13, 2005 ruling denying its motion for summary judgment based upon quasi-judicial and qualified immunity.[3]  On appeal, the Board maintained that absolute quasi-judicial and qualified immunity were applicable and barred suit against the Board.  The Fifth Circuit reversed and rendered finding merit in the Board's defense of qualified immunity and, therefore, did not address the Board's claim of absolute judicial immunity.[4]  The appellate court explained its resolution of the case as follows:

> For the reasons that follow, the Board has qualified immunity; therefore, we need not address the other claimed immunity.
>
>     Qualified immunity is an affirmative defense. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991).  The immunity protects against "not only unwarranted liability,

---

[2]*See* Order and Reasons filed January 13, 2006, at pp. 8-11 (denying the Board's Motion for Summary Judgment, *inter alia*) [Rec. Doc. No. 65].

[3] Board's Notice of Appeal filed February 10, 2006 [Rec. Doc. No. 68].

[4]*See* Fifth Circuit Court of Appeals Judgment/Opinion  (5th Cir. Dkt. No. 05-30194) filed May 4, 2006 [Rec. Doc. No. 103].

but [also] unwarranted demands customarily imposed upon those defending a long drawn out lawsuit". *Id.* at 232.  **To achieve these goals, it should be raised as early as possible in the litigation**. *Brown v. Lyford*, 243 F.3d 185, 191 (5th Cir.), *cert. denied*, 534 U.S. 817 (2001).  The plaintiff has the burden of overcoming a qualified-immunity defense.  *Atteberry v. Nocona Gen. Hosp*., 430 F.3d 245, 253 (5th Cir.2005).

* * *

It appears the district court based its qualified-immunity denial on the equal-protection, not the due-process, claim.  It also appears, however, that the court did not undertake the mandatory first-step analysis for qualified-immunity vel non (violation of constitutional right) and based the denial on step two (objective reasonableness).  It concluded: "[T]here are material issues of fact as to whether the [Board's] actions were objectively reasonable.... Unequal treatment for the same misconduct, if proved, would present a serious jury issue".  *Nance v. New Orleans & Baton Rouge S.S. Pilots Ass'n*, No. 03-3092, slip op. at 10 (E.D. La. 13 Jan. 2005) (unpublished) (emphasis added).

A.

The collateral-order doctrine is appropriate for this interlocutory appeal because qualified immunity vel non against Nance's due-process and equal-protection claims "turns on an issue of law": step one of qualified-immunity analysis.  *Michalik*, 422 F.3d at 257.  Restated, whether Nance shows a clearly-established constitutional claim under current law, as discussed infra, is a "purely legal question".  *Siegert*, 500 U.S. at 232.

We are not to "assume[ ], without deciding," that an alleged violation satisfies step one. *Id*. at 234.  "This must be the initial inquiry."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  For the two-step qualified-immunity analysis, we must first determine whether, under current law," 'a constitutional right would have been violated on the facts alleged' ".  *McClendon v. City of Columbia*, 305 F.3d 314, 322-23 (5th Cir.2002) (en banc) (*quoting Saucier*, 533 U.S. at 200), *cert. denied*, 537 U.S. 1232 (2003). (In determining whether, under current law, a clearly-established constitutional right was violated in a particular case, "a court might find it necessary to set forth principles which will become the basis for a holding that a right is clearly established".  *Saucier*, 533 U.S. at 201.)  Second, even if such a right was violated, the official remains protected by "qualified immunity if his conduct was objectively reasonable" in the light of then clearly-established law.  *Lukan*, 183 F.3d at 346.

B.

The material examined at step one differs, of course, depending on whether we are addressing a motion to dismiss or for summary judgment.  For the former, we examine "the defendant's conduct as alleged in the complaint".  *McClendon*, 305 F.3d at 323 (internal quotation marks omitted) (emphasis in original).  For the latter, we "no longer [permit the plaintiff to] rest on the pleadings", instead examining the summary-judgment evidence. *Id*. (internal quotation marks omitted).  Pursuant to our review of such evidence, the § 1983

6

due-process and equal-protection claims fail for the following reasons.

1.

Procedural-due-process guarantees are invoked when a state actor deprives an individual of a protected life, liberty, or property interest. *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir.2001) ("To bring a procedural due process claim under § 1983, a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest.").

\* \* \*

Viewing the summary-judgment evidence in the requisite light most favorable to Nance, he fails, under current law, to show a clearly-established procedural-due-process violation. It is questionable whether he shows a protected liberty interest, because he does not attempt to show he is a protected public employee for whom a liberty interest could attach. In any event, he does not show he was deprived of procedural due process. (As noted, the district court did not appear to base its qualified-immunity denial on this claim. It is not mentioned. Notwithstanding our review being *de novo*, the district court's relying only on equal protection is quite consistent with our holding no due-process violation is shown.)

2.

Nance's other § 1983 claim is that the Board violated his Fourteenth Amendment right to the equal protection of the laws. His complaint states: "The application of the alleged rules of the Board of Examiners of NOBRA, was arbitrary and capricious and caused certain persons, including Nance, to receive disparate and unequal treatment in violation of Nance's right to equal protection of the laws". In his brief, he maintains he was discriminated against because of his political affiliation as a supporter of Captain Clayton, who was ousted from the presidency of NOBRA in its 2001 elections.

Traditionally, for an Equal Protection claim, "a § 1983 plaintiff must [show in contesting summary judgment] that a state actor intentionally discriminated against the plaintiff because of membership in a protected class". *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir.1999) (internal quotation omitted). The Supreme Court has explained, however, that the Equal Protection Clause does give rise to a claim on behalf of a "class of one" who has not alleged membership in a class: "Our cases have recognized successful equal protection claims brought by a 'class of one', where the plaintiff [shows] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment". *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This requires a plaintiff to show standards were applied differently to him than to others similarly situated. *Bryan v. City of Madison*, 213 F.3d 267, 276-77 (5th Cir.2000), *cert. denied*, 531 U.S. 1145 (2001). Alternatively, the plaintiff may show that a government policy or procedure was selectively enforced against him. *Id.* at 277. This requires showing "the government official's acts were motivated by improper considerations, such as

7

race, religion, or the desire to prevent the exercise of a constitutional right". *Id.*
    "[I]t is clearly established that a state violates the equal protection clause
when it treats one set of persons differently from others who are similarly
situated". *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 510 (5th
Cir.2001) (internal quotation marks omitted) (alteration in original). What is less
clear, and thus probably not clearly established as required by step one of
qualified-immunity analysis, however, is whether this "class of one"
jurisprudence applies outside the zoning land use and assessment context, where
it is typically employed. *See Shipp v. McMahon*, 54 F. App'x 413 (5th Cir.2002).
    We need not determine whether the "class of one" doctrine-much less,
whether it is clearly established-applies because Nance's summary judgment
evidence fails to demonstrate an equal-protection violation. Although he asserts
he received different punishment than other pilots for similar infractions because
of his political affiliation with Captain Clayton, he fails to show other pilots were
both similarly situated and treated differently. *See Bryan*, 213 F.3d at 276-77.
Instead, he merely makes unsubstantiated, vague assertions that he and
unspecified others received unequal treatment.
III.
    For the foregoing reasons, the qualified-immunity denial for board
members Shows, Daniels, and Shirah is REVERSED and judgment is
RENDERED for them.[5]

## <u>CONTENTIONS OF THE PARTIES</u>

Citing *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 420 (1978) as authority, the

Board contends that, as prevailing defendants, they are entitled to an award of attorney's

fees/costs under § 1988 because the plaintiff's claims against the Board and its members were

frivolous, unreasonable and groundless. In this regard, the Board highlights the district judge's

ruling dismissing plaintiff's §§ 1985 and 1986 claims on summary judgment [Rec. Doc. No. 65]

and the Fifth Circuit's opinion reversing the denial of summary judgment as to the Board's

qualified immunity defendant based upon the summary judgment record which failed to

specifically show that other pilots were both similarly situated and treated differently. [Rec. Doc.

---

[5]*Nance v. New Orleans and Baton Rouge Steamship Pilots' Ass'n*, No. 05-30194, slip op.
at ** 3-6, 2006 WL 925532 (5th Cir., Apr. 10, 2006) (bolding emphasis added) [Rec. Doc. No.
103].

No. 103].  Defendant focuses on the Fifth Circuit's conclusion that the summary judgment record reveals only "unsubstantiated, vague assertions that he and unspecified others received unequal treatment."  [Rec. Doc. No. 103/p. 13].  The Board contends that this language in the Fifth Circuit's opinion makes it perfectly clear that plaintiff's suit meets bar ( *i.e.*, frivolous, unreasonable and/or without foundation) and constitutes the "law of the case."

With respect to the factors outlined in *United States v. State of Mississippi,* 921 F.2d 604 (5th Cir. 1991) for purposes of determining frivolity – whether (1) plaintiff established a prima facie case; (2) whether defendant offered to settle; and (3) whether the *district judge* dismissed the case or held a full blown trial – the Board contends that all three are met in this case.   The Board explains that the factors are satisfied because plaintiff did not establish a *prima facie* case with respect to his §§ 1985 and 1986 claims, his § 1983 claim was dismissed by the appellate court  without a trial, per the Fifth Circuit's opinion plaintiff's summary judgment evidence of unequal treatment amounted to no more than unsubstantiated and vague assertions and the Board never offered to settle.

Defendant discusses at great length the tremendous amount of dedication and work which was invested in this case and argues that the extensive discovery completed (over fifteen lengthy depositions), extensive motion practice, complete trial preparations and appellate proceedings thereafter justify an award in excess of $125,000.00.  In this regard, the Board contends that it was "plaintiff's incessant prosecution of his baseless claims that required the Board of Examiners to mount a strong unrelenting defense," and that, "as a result, the Board of Examiners

incurred substantial attorney fees and costs."[6]

At the outset, plaintiff points out that the Board's motion mistakenly leaves the Court with the impression that individual members of the Board have incurred fees and costs, when, in fact, legal fees and costs of the Association are paid by the foreign flag vessels piloted by NOBRA pilots. *See* La. R.S. 34:1122B.  Plaintiff notes the potential for a double recovery in that (1)  pilots may have collected first through their tariff's imposition of all expenses on vessels they pilot and (2) now seek to collect fees and expenses again from Nance.

Plaintiff highlights that the Board seeks an award of $123, 615.00 (fees) plus $2,938.71 (costs) pursuant to the pending motion, which includes appellate fees and costs.  Plaintiff notes that the Board has also filed a bill of attorney's fees and costs in the Fifth Circuit Court of Appeals seeking $47,140.00 in attorney's fees and $1,917.70 (costs) for the appellate proceedings.

Plaintiff contends that the case against the Board cannot be compared with the action against NOBRA for conspiracy to influence the Board's disciplinary proceedings.  Nance distinguishes the case against the NOBRA defendants, noting the bases of the order granting their § 1988 motion to award fees, to wit: (1) once NOBRA's motion for summary judgment was filed, plaintiff should have realized its action against them was frivolous; (2) summary judgment evidence of any connection with the Board's disciplinary proceedings was absent; (3) the district court so held; and (4) plaintiff continued to press his claims regardless.  Nance distinguishes the Court's prior ruling, noting that the point at which the plaintiff should have realized its action

---

[6]*See* Board of Examiners' Memorandum in Support of Motion to Award Attorney's Fees and Costs, at p. 7 [Rec. Doc. No. 102].

was frivolous never occurred with respect to his action against the Board.  Plaintiff further highlights that the district judge denied the Board's motion on each and every immunity issue raised and plaintiff merely made a good faith defense of his position in the Court of Appeal.  As a consequence, plaintiff argues that his claim against the Board was not *clearly* without factual and/or legal foundation from the outset, nor frivolous.

Plaintiff urges this Court to consider the "chilling effect" a fee award would have on the enforcement of civil rights in the absence of substantial reasons for imposing any such award. Plaintiff notes that the "stringent standard applicable to defendants is intended to insure that plaintiffs with uncertain but arguably meritorious claims are not altogether deterred from initiating litigation by the threat of incurring onerous legal fees."[7]  Quoting *Vaughner v. Polito*, 804 F.2d 873, 878 (5th Cir. 1986), plaintiff reminds the court that: "To avoid discouraging all but airtight claims, courts should focus on whether a plaintiff's claim is colorable and of arguable merit" and that "even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing a lawsuit."[8]

Plaintiff argues that the NOBRA majority has already signaled its intention to suppress the minority, by the adoption of a rule – a loser pays provision.[9]  Finally, plaintiff points out that neither the district judge, nor the court of appeals found that the plaintiff's action against the

---

[7]*See* Plaintiff's Memorandum in Opposition, at p. 1 [Rec. Doc. No. 105].

[8]*Vaughner v. Pulito*, 804 F.2d 873, 878 (5th Cir. 1986) (inner quotation marks and citations omitted).

[9]*See* Plaintiff's Exh. 1 (November 29, 2004 Proposed Rule/Charter Change – Lawsuits – "The purpose of this proposed rule/charter change is to institute a "loser pays" provision applicable to suits between NOBRA, its officers, directors, employees, and its Board of Examiners and one or more of its active or retired members") [Rec. Doc. No 5].

Board was frivolous.

The Board's reply first addressed the plaintiff's argument regarding the possibility of a double recovery of fees and costs.  Defendant argued that, under plaintiff's theory, no government entity sued under § 1983 could ever collect attorney's fees for a frivolous claim.  As to the "chilling effect," the Board submits that the plaintiff steadfastly refuses to recognize that, between this Court and the Court of Appeals, every one of his claims were flatly rejected. The Board further explains that it has no intention of collecting attorney's fees/costs for the appellate proceedings both from this Court and pursuant to his pending application in the Court of Appeals as well.  Finally, the Board notes that plaintiff has not disputed either the hourly rate, the fees sought, the validity of the overall amount prayed for or the appropriateness of any particular charge and therefore it is entitled to reimbursement for all fees and costs incurred in connection with this matter.

## ANALYSIS

Under § 1988, the court, in its discretion, may allow the prevailing party a reasonable attorney fee as part of the costs. 42 U.S.C. § 1988(b). A successful civil rights defendant may recover attorney fees against the plaintiff *only if* the plaintiff's action was "frivolous, unreasonable, or without foundation."[10]

---

[10]*See White v. South Park Indep. School Dist.*, 693 F.2d 1163, 1169-70 (5th Cir.1982); *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir.2001) ("[A]ttorney's fees for prevailing defendants are presumptively unavailable unless a showing is made that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit.").

A suit is frivolous if it is "so lacking in arguable merit as to be groundless or without foundation."[11]   While this standard does not require a showing of bad faith on the part of plaintiff, district courts should avoid "post hoc reasoning by concluding that because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."[12] The factors important to frivolity determinations are whether (1) plaintiff established a *prima facie* case, (2) the defendant offered to settle, and (3) the district court dismissed the case or held a full-blown trial.[13]

In the present case, in a quite concise summary judgment ruling, the district judge held in favor of the NOBRA Defendants _on all claims_.  The plaintiff's allegations regarding the complicity/participation of the NOBRA Defendants were not supported by any competent evidence whatsoever, there was no offer to settle and, even assuming Nance was not unreasonable in initially professing that the NOBRA Defendants conspired to influence the disciplinary proceedings instituted against him by the Board, at some point his action became frivolous.  It was undisputed that the NOBRA Defendants undertook no specific actions regarding Nance's case and Nance alone negotiated with the Board regarding the disciplinary proceedings and punishment.  Nance's claims against the NOBRA Defendants were certainly frivolous by the time the NOBRA defendants filed their motion for summary judgment and yet, the plaintiff persisted.  Unlike plaintiff's action against the Board, the case against the NOBRA

---

[11]*Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1140-41 (5th Cir.1983).

[12]*Christianburg Garment Co. v. EEOC*, 434 U.S.  412, 98 S.Ct. 694, 697 (1978).

[13]*See United States v. State of Mississippi*, 921 F.2d 604, 609 (5th Cir.1991).

defendants was groundless and fit perfectly within the factors set forth by the court in *United States v. State of Mississippi*, 921 F.2d 604, 609 (5th Cir.1991).

The governing law permits prevailing defendants an award of attorney's fees under section 1988 only upon a finding that the plaintiff's action "was frivolous, unreasonable, or without foundation *or that the plaintiff continued to litigate after it clearly became so.*" [14] Plaintiff submits that that point was never reached in his action against the Board. This Court agrees. With respect to the merits of plaintiff's action against the Board, the district judge determined that there were material issues of fact regarding the equal protection issue, noting that the "plaintiff presents evidence that there have been other pilots who have received less severe punishments for comparable violations."[15] The defendant makes much ado of the summary dismissal of plaintiff's §§ 1985 and 1986 claims; however, all of plaintiff's articulated theories of recovery against the Board arose out of the same set facts, *i.e.*, its investigation/institution of disciplinary proceedings and his alleged disparate treatment in terms of the punishment imposed *vis a vis* other pilots. Unlike his action against the NOBRA defendants, which was based entirely on their alleged complicity with the Board, Nance's *action* against the Board was not frivolous, unreasonable, or without foundation and was not *clearly* without any arguable merit until the Fifth Circuit rendered its opinion.

The Fifth Circuit's decision regarding the failure of plaintiff's proof at the summary judgment stage does not necessarily translate into a finding that no such proof ever existed or

---

[14]*Christianburg Garment Co.,* 434 U.S. at 422 (italicized emphasis added); *Coats v. Pierre*, 890 F.2d 728, 733 (5th Cir.1989); *Lopez v. Arkansas County Independent School District*, 570 F.2d 541, 545 (5th Cir.1978).

[15]*See* Order and Reasons dated January 13, 2005, at p. 10 (Rec. Doc. No. 65).

that plaintiff's suit was "frivolous" and/or groundless at the outset.  In this regard, the Court

notes that plaintiff belatedly filed a motion to compel which was heard on December 22, 2004

(within two weeks of the pretrial conference).  As to plaintiff's motion seeking to compel

production of *all BOE records pertaining to any other investigation of any other NOBRA pilot

on any disciplinary proceeding,* the Board's objection (overly broad) was sustained.  Particularly

considering the timing of the motion to compel, the Court denied plaintiff's motion seeking

supplemental discovery responses within weeks of the pre-trial conference.[16]  It simply cannot

now be determined that: (1) more narrowly tailored document requests, complimented by a

timely motion to compel, would or would not yield sufficient and/or specific proof of an equal

protection violation; or (2) such evidence was lacking from the outset.  It is clear that the Fifth

Circuit did not decide that no such evidence exists;  rather, its opinion was that evidence with the

requisite specificity was not contained in the summary judgment record.

     The Court now turns to the Board's argument that, for purposes of this Court's § 1988

inquiry, the Fifth Circuit's determination on the merits of the Board's appeal is tantamount to a

finding that the plaintiff's action is "frivolous, unreasonable or without foundation."  This Court

disagrees and finds that the "law of the case" doctrine neither confines nor pretermits

examination of the issue of § 1988 "frivolousness."

     In *White v. New Hampshire Dep't of Employment Security*, 455 U.S. 445 (1982),  the

Supreme Court held that a post judgment motion for attorney's fees under §1988 was not a

motion to amend or alter a judgment, governed by Rule 59(e), *because an award of attorney's*

---

[16]*See* Order issued December 29, 2004 [Rec. Doc. No. 57]; Order dated January 13, 2006
(affirming the aforesaid discovery ruling) [Rec. Doc. No. 65].

fees "is *uniquely separable from the cause of action to be proved at trial.*"[17]   The Court reasoned that because "[s]ection 1988 provides for awards of attorney's fees only to a 'prevailing party[,]' ... the court's decision of entitlement to fees will ... require an inquiry separate from the decision on the merits – **an inquiry that cannot even commence until one party has 'prevailed.' "**[18]

The *Fuhrman* case is inapposite.  In *Fuhrman*, the district court ignored the *specific mandate* of the appellate court, instructing on remand that review was limited to specific issues, *i.e.*, a definitive finding whether Fuhrman lost good-time credits in any disciplinary cases  for refusing to submit a DNA specimen.  Because the district court clearly a deviated from the specific confines of the appellate court's mandate by determining that Fuhrman's Georgia conviction was not a DNA eligible offense and improperly reexamined an issue decided on appeal, the appellate court found that it contravened the "law of the case" doctrine.[19]

In the case at bar, the trial court's decision denied the Board's motion for summary judgment and did not address the merits of the Board's claim for attorney's fees.  On appeal, the panel ruled only upon the viability of plaintiff's substantive constitutional claims on the merits in light of the immunity defense asserted by the Board.  Although the judgment of the Fifth Circuit provides that "[i]t is further ordered that plaintiff-appellee pay to defendants-appellants the costs of appeal to be taxed by the Clerk of this Court," neither the Fifth Circuit's opinion in this case[20]

_____

[17]*White v. New Hampshire Dep't of Employment Security*, 455 U.S. 445, 452 (1982) (italicized emphasis added).

[18]*Id*. at 451-52 (bolding emphasis added).

[19]*Fuhrman v. Dretke*, 442 F.3d 893, 897 (5th Cir. 2006).

[20]The panel opinion recites:  "The qualified-immunity denial for board members Shows, Daniels and Shirah is REVERSED and judgment is rendered for them."  [Rec. Doc. No. 103 at p. 13].

nor its judgment made reference to attorneys' fees.[21]   Moreover, the Board did not file its Bill of Attorney Fees and Costs in the Fifth Circuit until May 16, 2006, *which was after judgment issued.*  Therefore, the issue of § 1988 attorney's fees was not before the Fifth Circuit when it reversed and rendered.

As the Supreme Court stated in *Christianburg*: "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit."[22]   Nance's decision to bring this action against the Board on the basis of alleged unequal punishment for similar infractions cannot be characterized as either frivolous, unreasonable or entirely groundless.  Ultimately, his action failed on appeal not because his action was frivolous or his grounds for bringing the suit were unreasonable, but rather for lack of sufficient *specific* proof of a constitutional (equal protection) violation in the summary judgment record.  As previously noted, plaintiff encountered some difficulty eliciting documentary discovery from the Board.  Plaintiff's overly broad request, together with his belated motion to compel, *may* account for the failure to produce more definitive/specific proof of plaintiff's equal protection claim.[23]

---

[21]*See* Judgment/Opinion[Rec. Doc. No. 103at p.1].

[22]*Christianburg*,  434 U.S. at 422.

[23]*See* Order issued December 29, 2004 [Rec. Doc. No. 57];  Order and Reasons dated January 13, 2006 (affirming the discovery ruling, granting summary judgment in favor of the NOBRA defendants and denying the BOE defendants' motion for summary judgment) [Rec. Doc. No. 65].

Additionally, this Court would be remiss in failing to consider that two different courts reviewed the summary judgment record and came to opposite conclusions regarding the sufficiency of evidence with respect to plaintiff's equal protection claim.  The mere fact that a reviewing court disagreed with the trial court's conclusion does not suffice to elevate plaintiff's action against the Board above the § 1988 fee-award threshold, such that characterization of the Board as a "prevailing" defendant under § 1988 is *ipso facto* proper.  The fact that plaintiff's case was dismissed before a full-blown trial on the merits is also not sufficient in and of itself to support a finding of frivolity, particularly considering that this qualified immunity case was resolved in the defendant's favor on appeal from the denial of summary judgment.[24]

Most notably, this Court's review of the record in this case reveals the following procedural facts, to wit:  (1) the Board only summarily alleged qualified immunity as a defense in its answer [Rec. Doc. No. 9]; (2)  no Fed. R. Civ. P. 12(b)(6) motion was filed at the outset; (3) concomitantly, no stay of discovery was sought pending resolution of the defendant's immunity defenses;  (4) the Board's original motion/memorandum in support of summary judgment (filed December 7, 2004) did not mention its qualified immunity defense [Rec. Doc. No. 40]; and (5) plaintiff's first cue as to the sum and substance of the Board's ultimately meritorious defense was *via* supplemental/reply memorandum filed on December 15, 2004 [Rec. Doc. No. 48]. Thereafter, the Board's Rule 56 motion was deemed submitted for determination on the briefs without oral hearing  [Rec. Doc. No. 52], together with the NOBRA Defendants' Rule 56 motion and plaintiff's appeal of a discovery ruling.   In sum, the Board raised all three immunity

---

[24]*Myers v. City of West Monroe*, 211 F.3d 289, 293 (5th Cir.2000).

18

defenses (Eleventh Amendment, Absolute Quasi-Judicial and Qualified) for the first time in the context of a fact-intensive motion for summary judgment filed only after *all* discovery was complete, the pretrial order was in its final stages of preparation and approximately $70,000.00 in attorneys' fees and costs were expended.

It is well-settled law that qualified immunity is not merely a defense to liability but an immunity from suit[25] and that one of its most salient purposes is to protect public officials from "broad-ranging discovery that can be peculiarly disruptive of effective government."[26]  Indeed, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal *before the commencement of discovery* ."[27]

Among the principles that emerge from the jurisprudence discussing immunity from suit are that:  first, a defendant must affirmatively plead the defense of qualified immunity in his answer;[28]  second, the plaintiff must be given an opportunity to file a Rule 7(a) reply if "greater detail might assist" in the resolution of this issue;[29]  third, the defendant should promptly move

---

[25]*Swint v. Chambers County Comm'n,* 514 U.S. 35, 42 (1995).

[26] *Anderson v. Creighton,* 107 S.Ct.3034, 3042 n. 6 (1987)(*quoting Harlow v. Fitzgerald,* 102 S.Ct. 2727, 2737-38 (1982)).

[27]*Mitchell v. Forsyth*, 105 S.Ct. 2806, 2815 (1985) (italicized and underline emphasis added); *see also Wicks v. Mississippi State Employment Services*, 41 F.3d 991, 994 (5th Cir.), *cert. denied*, 515 U.S. 1131 (1995);  *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir.1986).

[28]*Siegert v. Gilley*, 111 S.Ct. 1789, 1793 (1991).

[29]*Schultea v. Wood*, 47 F.3d 1427, 1434 (5th Cir. 1995) (en banc).

for dismissal under Rule 12(b)(6) if the pleadings fail to allege sufficient facts to overcome the immunity defense; and fourth, the court *must* stay discovery pending determination of the motion, except to the limited extent that discovery is necessary to determine the applicability of the immunity defense.[30]  The timing and sequence of these procedures enable the Court to decide the threshold question of qualified immunity "at the earliest possible stage in litigation."[31]

Having  pled immunity in its answer, the Board, nevertheless, took an awry tack casting it fate to the winds of litigation and abandoning the course of time-honored procedures specifically tailored to obviate the needless expense and disruption of official business in a qualified immunity case.   The Board did eventually attempt to correct its course and reach for the refuge that immunity was designed to afford at the commencement of the case; however, it came about only after running the gauntlet of complete trial preparations.   Now it seeks delay damages under the aegis of § 1988 as a "prevailing" defendant.

The zigzag course taken in this litigation flouts the protections that immunity sires and illustrates how far litigants can stray from the proper procedural focus in a qualified immunity case.  As aforestated, the Board only summarily alleged qualified immunity as a defense, never

---

[30]*See Wicks v. Mississippi State Employment Services*, 41 F.3d 991, 994 n. 10 (5th Cir. 1995) (*citing Brown v. Texas A & M Univ.*, 804 F.2d 327, 333 (5th Cir.1986) for the proposition that "the issue of qualified immunity is a threshold question, and '[u]ntil this threshold immunity question is resolved, discovery should not be allowed.' ").

[31]*Hunter v. Bryant*, 112 S.Ct. 534, 536 (1991);  *Anderson*, 107 S.Ct. at 3042 n. 6; *Nance v. NOBRA,* 2006 WL 925532 at * 3 (5th Cir. April 10, 2006) (To achieve the purposes/goals of the qualified immunity defense  –  protection against "unwarranted liability" and  "unwarranted demands customarily imposed upon those defending a long drawn out suit" – it should be raised as early as possible in the litigation.") [Rec. Doc. No. 103].

asked for a Rule 7(a) reply and did not move for dismissal under Fed. R. Civ. P. 12(b)(6).  The

Board's original Rule 56 motion and memorandum in support did not mention  "qualified

immunity" or address whether plaintiff showed a violation of a clearly-established constitutional

claim under current law  – a purely legal question.[32]   Indeed, the issue of whether plaintiff's

detailed factual allegations, if proved, give rise to a violation of a "clearly established" right was

not decided by the Fifth Circuit Court of Appeal on review.[33]  Consequently, this Court is not

persuaded that the Board incurred substantial attorney fees and costs *as a result of*  "plaintiff's

incessant prosecution of his baseless claims that required the Board of Examiners to mount a

strong unrelenting defense."[34]

For whatever reason, the Board chose not to engage qualified immunity as a threshold

matter.  Invariably – and this case is no exception – the summary judgment motion is not limited

to the issue of qualified immunity, but covers the underlying substantive claims as well.  Such

maneuvering creates inefficiency and confusion in the resolution of qualified immunity, as it did

in this case.  Considering the record in its entirety and the Fifth Circuit's opinion in this matter,

---

[32]*See* Board's Motion and Memorandum in Support of Summary Judgment filed December 7, 2005 (arguing only that (1) the uncontested facts show that plaintiff admitted to the misconduct and consented to the discipline imposed, (2) plaintiff has no evidence of discriminatory purpose behind the investigation, (3) Eleventh Amendment immunity bars plaintiff's claim and (4) Quasi-Judicial immunity serves as an absolute bar to plaintiff's claims) [Rec. Doc. No. 40].

[33]*See Nance v. New Orleans and Baton Rouge Steamship Pilots' Ass'n*, No. 05-30194, slip op. at *6, 2006 WL 925532 (5th Cir., Apr. 10, 2006) ("We need not determine whether 'the class of one' doctrine – much less, whether it is clearly established – applies because Nance's *summary judgment evidence* fails to demonstrate an equal protection violation.") (italicized emphasis added) (italicized emphasis added) [Rec. Doc. No. 103].

[34]*See* Board of Examiner's Memorandum in Support of Motion to Award Attorney's Fees and Costs, at p. 7 [Rec. Doc. No. 102].

21

in this Court's view, it is more likely than not that the magnitude of attorneys' fees and costs claimed were incurred because immunity was litigated last instead of first.  Clearly, plaintiff did not make that choice and, in the absence of a Rule 12(b)(6) motion, plaintiff had no choice but to comply with the district court's scheduling order and vigorously prepare his case for trial *on the merits*.

It is this Court's opinion that it would be inappropriate and unjust to allow the Board to derive benefit as a "prevailing" defendant under § 1988 under the circumstances explained above.   Nothing in § 1988 requires the imposition of attorney's fees in favor of a prevailing defendant.  Moreover, this Court is not convinced that the plaintiff's action was "frivolous" and for that reason, standing alone, an award of § 1988 attorneys' fees is not warranted.

Although the Court, in its discretion, finds that a § 1988 award attorneys' fees and costs is <u>not</u> warranted on the basis of "frivolity," an award of costs pursuant to Rule 54 of the Federal Rules of Civil Procedure is nevertheless appropriate.  Rule 54(d) provides that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs[.]"[35]   The Fifth Circuit "recognize[s] a strong presumption that the court will award costs to the prevailing party."[36]   Even where a court declines to award costs pursuant to § 1988, an award of costs pursuant to Rule 54(d) is appropriate, as such an award does not require

---

[35]Fed. R. Civ. P. 54(d)(1).

[36]*Salley v. E.I. DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 (5th Cir.1992) (*citing Sheets v. Yamaha Motors Corp., U.S.A.*, 891 F.2d 533, 539 (5th Cir.1990)).

22

a finding that the action is frivolous, unreasonable, or without foundation.[37]   Therefore, the

Board should recover the costs it incurred in this case, *as authorized by 28 U.S.C. § 1920.*

Accordingly,

## CONCLUSION

**IT IS RECOMMENDED** that the court issue the following orders, to wit:

**IT IS ORDERED** that the Board of Examiners' Motion for Award of Attorney Fees and

Costs be DENIED IN PART, that is insofar as the Board seeks an award of attorney fees and

costs pursuant to 42 U.S.C. § 1988 as a prevailing defendant.

**IT IS FURTHER ORDERED** that the Board of Examiners' Motion is GRANTED IN

PART, that is insofar as it seeks to an order pursuant to Fed. Civ. P. 54(d) that costs be taxed

against the plaintiff as authorized by 28 U.S.C. § 1920.

**IT IS FURTHER ORDERED** that, in accordance with Local Rule 54.3 and  within 30

days of the entry of this order, the Board of Examiners shall file with the Clerk of this Court a

notice of application to have the costs taxed, together with a memorandum signed by the attorney

of record stating that the items are correct in that the items sought to be taxed are consistent with

the dictates 28 U.S.C. § 1920 and that the costs have been necessarily incurred.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and

recommendations in a magistrate judge's report and recommendation within ten (10) days after

---

[37]*See Jones v. City of San Antonio*, 568 F.2d 1224, 1226 (5th Cir.1978) (affirming award of costs in case alleging claims under Title VII, § 1983, and other statutes, stating that Rule "54(d) grants costs to the prevailing party as a matter of course in the absence of a countervailing rule or statute, unless the trial judge directs otherwise.").

being served with a copy shall bar that party, except upon grounds of plain error, from attacking

on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the

district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*., 79 F.3d 1415, 1430 (5th

Cir. 1996) (*en banc*).

      New Orleans, Louisiana, this 29th day of June, 2006.


                                      **DANIEL E. KNOWLES, III**
                                      **UNITED STATES MAGISTRATE JUDGE**